(86 Misc. Rep. 266)

### DAY et al v. CITY OF DUNKIRK.

(Supreme Court, Equity Term, Chautauqua County. June 25, 1914.)

1. MUNICIPAL CORPORATIONS (§ 474*)—SPECIAL ASSESSMENT FOR PUBLIC IMPROVEMENTS—APPORTIONMENT.

The charter of a municipality provided that the cost of sewers should be assessed upon the property adjoining the street according to frontage, but that, when property abutting upon intersecting streets shall already have been assessed for a sewer opposite one of its abutting fronts, it should be exempt from assessment for sewers in the other intersecting

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

street for a distance back of not more than 100 feet. *Held*, that the charter was mandatory, and the assessors, in spreading the assessment, could not omit from assessment some of the property on a street wherein a sewer was laid because it had been assessed for an earlier sewer, which was adequate to the needs of that property.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1122–1124; Dec. Dig. § 474.*]

2. CONSTITUTIONAL LAW (§ 290*)—MUNICIPAL CORPORATIONS (§ 469*)—PUBLIC IMPROVEMENTS—SPECIAL ASSESSMENT—DUE PROCESS OF LAW.

The Legislature may direct the apportionment of the entire cost of a street improvement upon abutting lots according to their frontage, without any judicial inquiry as to value or benefits; and this does not constitute a taking of property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290;* Municipal Corporations, Cent Dig. §§ 1113–1117; Dec. Dig. § 469.*]

Action by Edmund Day and others against the City of Dunkirk. Judgment for plaintiffs.

John K. Patterson, Jr., of Dunkirk, for plaintiffs.
Lyman A. Kilburn, of Dunkirk, for defendant.

WHEELER, J. This action is brought to set aside an assessment for the construction of a sewer in and along Central avenue, in the city of Dunkirk.

[1] After the work had been completed, and the cost of the improvement ascertained, the board of assessors adopted a resolution to the effect that 793 feet of the sewer north of the line of Marsden street is of no benefit to the abutting property owners, and therefore the total cost of the sewer should be assessed to the abutting property owners "south of the Pennsylvania and Nickel Plate tracks, the street railway company and the city of Dunkirk, as assessed on the Central avenue sewer assessment roll." This resolution was based upon the fact that a sewer, constructed in 1883, already existed in the street in front of the 793 feet in question, and that the building of the new sewer parallel to and beside it, in the opinion of the assessors, conferred no benefit on the property abutting on this portion of the avenue. The assessment was spread accordingly, and this action is brought to set the assessment aside, among other grounds, upon the ground that the method of assessment adopted violated the plain and explicit directions of the charter of the city of Dunkirk providing the method to be pursued in such cases.

Section 154 of the charter provides:

"Sec. 154. Apportionment of Costs.—The cost and expense of any and all sewers constructed under the authority of this title, shall be charged upon and collected from the property adjoining the street in which such sewer is constructed, pro rata, share and share alike, in proportion to the number of feet which each owner has of frontage on that portion of the street through which such sewer is laid, subject, however to the provisions herein contained. When property abutting upon intersecting streets shall have already been assessed for a sewer or sewers opposite one of its abutting street fronts, it shall be held exempt from assessment for any sewers laid in the other inter-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

secting streets for a distance back from such intersecting street of not more than one hundred feet. The expense of laying such sewer upon intersecting streets shall be borne pro rata, share and share alike, by the number of remaining feet of foot frontage upon each and every block, except as provided for the cost of laying such sewer across street intersection. The assessors of the city of Dunkirk whose duty it shall be to determine what property is benefited by such sewer and to assess upon the property so benefited, as liable under the provisions of this title to be charged with the cost and expense of its construction in a just and equitable manner, and in accordance with the rules prescribed in this title. Upon the completion of such sewer, the common council shall prepare and deliver to said assessors a true statement showing the entire length of the sewer, its total cost, its cost per lineal foot, the number of feet of street crossings, and such other facts as it shall deem necessary, or as may be required by said assessors. Said assessors shall thereupon make up a special assessment roll in the same manner as is provided in this act for the special assessment of property owners, under the title covering paving and macadamizing of streets, and shall have a review day thereof, and hear objections in the same manner as is provided in this act for the hearing and review day of the special assessment roll made for the paving or macadamizing of streets. Said roll shall finally be approved by the common council, and when so approved, shall be delivered to the receiver of taxes with its warrant for the receipt and collection of the same, and said assessment shall be a lien upon the premises therein mentioned and described in the same manner as other taxes and assessments. In making such assessment upon the property benefited, the streets so crossed by such sewer shall be charged with their proper proportionate share of the cost and expense of such sewer, and when streets are used only as highways the cost and expense of constructing such sewer through such streets shall be paid by the city. When the streets so crossed by such sewer shall be used both as highways and railways, then and in that case, the cost and expense of constructing such sewer through such cross streets shall be paid by the city and said railway. Such railway shall be charged with a just and reasonable proportion of said sewer, according to the benefits derived, and the balance of said cross streets to be paid by the city."

The city contends that, under this section, discretion is vested in the board of assessors to determine what lands were benefited by the new sewer, and to assess the cost accordingly. We have carefully studied the provisions of this charter, and are unable to agree with this contention on the part of the city. The charter appears to be mandatory that the cost and expense *"shall be charged upon and collected from the property adjoining the street * * * pro rata, share and share alike, in proportion to the number of feet each owner has of frontage on that portion of the street* through which such sewer is laid, subject, however, to the provisions herein contained." Then follow provisions exempting lots previously assessed for sewers in *"intersecting"* streets for a distance of not more than 100 feet back. It then provides that after making such exceptions the cost shall be *"borne pro rata * * * by the number of remaining feet of foot frontage upon each and every block."* The assessors are then to spread the assessment upon the property benefited by such sewer *"as liable under the provisions of this title* to be charged with the cost and expense of its construction in a just and equitable manner, *and in accordance with the rules prescribed in this title."*

I am unable to discover how the language just quoted enlarges the powers or authority of the assessors to substitute their own judgment and discretion as to the property benefited beyond the rule prescribed

in the section, which directs the assessment to be made *"pro rata * * * in proportion to the number of feet which each owner has of frontage on the portion of the street through which such sewer is laid."* It is by the charter made the duty of the board of assessors to ascertain and make proper allowances and exemptions where property has already been assessed for sewers in intersecting cross-streets; but beyond the exemptions specified and named in the charter there appears to be given the board no other or greater power to exempt, even though, in their judgment, some of the frontage on the street in which the sewer is laid is not benefited equally (or at all) with other property. If we are correct in this interpretation of the charter of Dunkirk, then the assessment attacked must be set aside, because by the assessment as made the plaintiffs' property has been made to bear a greater burden of taxation than can be legally imposed upon them. In other words, they are assessed for a portion of the cost of the sewer which the Legislature has declared shall be borne by other owners.

[2] It is not beyond the power of the Legislature to direct the apportionment of the entire cost of a street improvement upon abutting lots according to their frontage, without any judicial inquiry as to their value or the benefits they receive, and this does not constitute a taking of property without due process of law. French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; People ex rel. Scott v. Pitt, 169 N. Y. 529, 62 N. E. 662, 58 L. R. A. 372. I am unable to reach any other conclusion than that the plaintiffs are entitled to a judgment vacating and setting aside the assessment complained of.

Let a decision be drawn accordingly. So ordered, with costs against the defendant.